# Exhibit A

FILED
2023 AUG 10 09:46 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 23-2-14872-0 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| 70TH AND GREENWOOD AVE, LLC a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AGCS MARINE INSURANCE COMPANY, an Illinois company.<br><br>Defendant. | Case No.<br><br>**COMPLAINT** |

Plaintiff 70th and Greenwood Ave, LLC alleges as follows:

## I. PARTIES

1. Plaintiff 70th and Greenwood Ave, LLC ("70th and Greenwood" or "Plaintiff,"), is a Washington limited liability company.

2. Defendant AGCS Marine Insurance Company ("AGCS" or "Defendant") is, on information and belief, an Illinois corporation.

## II. JURISDICTION AND VENUE

3. The Court has personal jurisdiction over AGCS because AGCS purposely availed itself of the benefits and protections of the State of Washington by selling and delivering insurance policies to 70th and Greenwood, a King County resident.

4. The Court has subject matter jurisdiction over this dispute pursuant to

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-1

Miller Nash LLP
605 5th Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

RCW § 2.08.010.

5.  Venue is proper in this court pursuant to RCW § 4.12.025(1) because AGCS conducted business in King County by selling an insurance policy to a King County resident, 70th and Greenwood, insuring 70th and Greenwood's property located in King County, Washington.

### III. FACTS

**A. The Project.**

6.  70th and Greenwood is the owner and developer of the "Shared Roof" project (the "Project").

7.  The Project, located in Seattle's Phinney Ridge neighborhood, is a mixed-use apartment building with five (5) commercial spaces on the first floor and thirty-five (35) residential units on floors two through five.

**B. The all-risks builder's risk policy purchased by 70th and Greenwood from AGCS.**

8.  70th and Greenwood paid a substantial premium to AGCS in exchange for a "builder's risk" insurance policy (the "Policy") promising that AGCS "will pay for direct physical 'Loss' to 'Covered Property' from any of the 'Covered Causes of Loss'."

9.  The term "Loss" is defined to mean "direct, physical loss, destruction or damage caused by a Covered Cause of Loss external to any Covered Property."

10. "Covered Property" is described in the Policy's declarations as the "construction of a 5-story wood frame apartment building" at the Project's mailing address.

11. The term "Covered Causes of Loss" is defined to mean "Risks of Direct Physical Loss or Damage to Covered Property from any external cause except those causes of loss listed in the Exclusions."

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT- 2

Miller Nash LLP
605 5th Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

12. Taking these definitions and descriptions together, the Policy's primary insuring clause provides that AGCS "will pay for direct physical loss, destruction or damage to the Project from any external cause except those causes of loss listed in the exclusions."

13. As a result, the Policy is an "all-risks" insurance policy. All-risk policies "provide coverage for all risks unless the specific risk is excluded," and thereby "shift the risk of loss away from [the insured] and place it upon an insurer." *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wn.2d 501, 514, 276 P.3d 300, 306 (2012) (internal citations omitted).

14. With regard to the cost of repairing or replacing "Loss," the Policy's per occurrence limits are $13,500,000.

15. The Policy, through a "Builder's Risk Delay of Occupancy or Use endorsement, provides an additional $1,000,000 of coverage for, among other things, "Soft Costs."

16. The Policy, through a Builder's Risk Plus" endorsement, then also provides an additional $5,000,000 of coverage per occurrence for "'Loss' from rain, snow, sleet, sand or dust to property while in the open and unprotected awaiting installation or construction."

17. With regard to exclusions, while the Policy provides that AGCS will not pay for "Loss" caused by or resulting from defective, faulty or inadequate workmanship or construction, the Policy states that AGCS will pay for "'Loss' to other Covered Property which is free of the defective, faulty or inadequate condition ... but is damaged in consequence thereof."

**C. 70th and Greenwood's claim to AGCS and its investigation.**

18. In December, 2021 the Project's construction manager, BNB Builders ("BNB"), informed 70th and Greenwood that it had discovered potentially significant water intrusion and damage caused by the same.

19. After BNB performed an initial, limited investigation, 70th and Greenwood opened a claim[1] with AGCS regarding the newly discovered damage.

---

[1] AGCS opted to treat the claim as an extension of a claim it was currently adjusting regarding damage to elevator equipment and weather-resistant barrier.

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-3

Miller Nash LLP
605 5ᵗʰ Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

20. In turn, AGCS elected to use a third-party adjusting company, Sedgwick Claims Management Services ("Sedgwick"), to investigate and handle 70th and Greenwood's claim.

21. On information and belief, despite Sedgwick's unreasonable and poor claims handling performance—performance that has resulted in thousands of bad faith lawsuits being filed by policyholders against insurers in the United States alone—AGCS performs no, or only minimal, oversight over Sedgwick's claims handling.

22. The Sedgwick adjuster initially assigned to the claim, Bradley Deforest, agreed to use Lisa Moe of Amento Group to investigate the damage giving rise to 70th and Greenwood's claim.

23. Amento Group is a well-respected building envelope forensics and investigation firm and Ms. Moe, an architect by trade, has over eighteen years of experience performing investigations into the cause and fact of water intrusion/water damage and developing scopes of repair for water intrusion/damage.

24. As a result of Mr. DeForest's agreement, 70th and Greenwood instructed Amento Group to perform the investigation of the damage (including its cause and magnitude) and to develop a scope of repair.

25. On or about February 4, 2022, Mr. Dale informed Mr. DeForest that Amento Group believed that the "majority, maybe all" of the exterior sheathing "will need to be replaced."

26. Mr. DeForest responded to Mr. Dale by stating "I don't see any issue with you doing whatever necessary to expedite your repairs."

27. In the same email, Mr. DeForest also asked his colleague, David Colucci, whether any reinspection was required. Mr. Collucci responded "No re-inspection necessary."

28. Accordingly, as of February 4, 2023, (1) Mr. DeForest's had agreed to use Ms. Moe to discharge AGCS's obligation to reasonably investigate 70th and Greenwood's claim, (2) Mr. Collucci had represented that that no reinspection was needed by ACGS; and (3) Mr.

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-4

Miller Nash LLP
605 5th Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

DeForest had represented that, at a minimum, the damaged sheathing was covered and that 70th and Greenwood should proceed with its repair.

29. Notwithstanding the forgoing representations, AGCS reversed itself a few weeks later as the financial magnitude of 70th and Greenwood's "Loss" became increasingly clear.

30. At that point, in late February, 2022, AGCS, through Sedgwick, retained Rocco "Rocky" Romero of Wiss, Janney, Elstner Associates, Inc ("WJE") as its lead investigator/building envelope consultant.

31. On information and belief, WJE/Mr. Romero were retained (1) due to their long history of collaborating with Sedgwick and insurers like AGCS to deny policyholder claims and/or limit the payment of benefits to policyholders and (2) to perform the very re-inspection Mr. Collucci had deemed unnecessary.

32. On or about the same time WJE/Mr. Romero were retained, Michael Gatewood replaced Mr. Deforest as lead adjuster.

33. On information and belief, Mr. DeForest was replaced due to Mr. Deforest having represented 70th and Greenwood's "Loss" was covered and because Mr. DeForest had previously authorized the payment of an earlier claim made by 70th and Greenwood that also involved damage to a building envelope component—the Project's weather resistant barrier or "WRB".

34. On information and belief, Mr. Gatewood is a large loss adjuster for Sedgwick whose popularity with Sedgwick's principal clients—multibillion dollar insurance companies—is due to his propensity for finding, and willingness to find, grounds to deny policyholders insurance benefits.

35. Mr. Romero's actions in performing AGCS's investigation were motivated at all times by his desire to provide Sedgwick and AGCS grounds to deny 70th and Greenwood's claim. By way of example not of limitation, before even beginning his investigation Mr. Romero

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-5

Miller Nash LLP
605 5ᵗʰ Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

informed 70th and Greenwood's principal, Chad Dale, that he was unlikely to find any property damage.

36. Mr. Romero and his team then did everything they could to meet Mr. Romero's promise to Mr. Dale. For example, WJE's team was observed taking samples of undamaged portions of Oriented Stand Board ("OSB") directly adjacent to damaged portions, photographing the least damaged portions of various building envelope components, and otherwise attempting to create an investigatory record inconsistent with the fact of damage.

37. Notwithstanding Mr. Romero and his team's alarming, partisan conduct—which was contemporaneously reported to Mr. Gatewood—no action was taken by Sedgwick or AGCS to replace Mr. Romero/WJE or otherwise ensure that an impartial investigation took place.

38. Further, notwithstanding that to reasonably investigate the damage to various building envelope and roofing assembly components required their removal and replacement, AGCS failed to reimburse 70th and Greenwood for any of the investigative costs it incurred.

39. As a result of 70th and Greenwood's misgivings regarding Mr. Romero's/WJE's belated retention by Sedgwick/AGCS—all of which were unfortunately proven to be well-founded—70th and Greenwood elected to continue to use Ms. Moe/Amento Group to investigate.

40. After completing the investigation of the damaged building envelope components, Amento Group published an April 19, 2022 report regarding the damage it observed, its cause and magnitude, and Amento Group's recommended scope of repair. The report was promptly transmitted to Mr. Gatewood.

41. The April 19, 2022 Amento Group report, which speaks for itself, found that discrete instances of defective workmanship allowed external water ingress into the Project which, ultimately, caused extensive, resulting damage to various building envelope components. Such components include, but are not limited to, the OSB, plywood sheathing, exterior gypsum

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-6

Miller Nash LLP
605 5th Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

sheathings, weather-resistant barrier ("WRB"), DensGlass, framing members, and intumescent paint.

42. After completing its investigation into the damaged components of the roofing assembly, Amento Group published another report. This report, dated October 4, 2022 report, sets forth the damage observed to the roofing assemblies' components, its cause and magnitude, and Amento Group's recommended scope of repair. The October 4, 2022 report was also promptly transmitted to Mr. Gatewood.

43. Amento Group's October 4, 2022 report, which speaks for itself, found that a broken pipe in conjunction with discrete instances of defective workmanship allowed water ingress that caused extensive, resulting damage to the roofing assemblies' individual components including. but not limited to, the WRB, insulation, vapor retarder and roofing membrane.

**D. AGCS's denials of coverage and policy benefit to 70th and Greenwood.**

44. On July 15, 2022, AGCS denied coverage to 70th and Greenwood for the majority of damage to the building envelope's individual components.

45. AGCS's denial correspondence is premised on the absurd assertion that there is a monolithic "envelope system" and, because there were discrete instances of defective workmanship in this monolithic "envelope system," there can be no covered property "free of the defective condition ... but damaged as a consequence thereof." In short, AGCS conflated all of the individual, damaged components of the Project's building envelope into one defectively constructed "system" in an attempt to use the Policy's defective workmanship exclusion to preclude coverage for the damage to any of them.

46. AGCS's unreasonable and logic-defying coverage position is further betrayed by the approximately $100,000 of coverage it agreed to provide which, according to AGCS, concerned covered property "other than the project's envelope system." However, damage to the building components that AGCS agreed to cover include components like "floor sheathing at exterior decks/balconies" that are as much part of the building envelope as any of the other

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-7

Miller Nash LLP
605 5ᵗʰ Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

components for which 70th and Greenwood sought coverage. AGCS's arbitrary and capricious selection of just a few allegedly "non-envelope system" components for coverage is highly probative to the unreasonableness of AGCS's denial.

47. Likewise, notwithstanding AGCS's position that the damaged WRB is but one giant piece of a defectively constructed "envelope system." AGCS had earlier, when it and 70th and Greenwood were unaware of the vast majority of damage to the WRB, agreed to provide coverage for a small section of the WRB that had been discovered to be damaged. However, when the quantum of damaged WRB changed, so did AGCS's coverage position. This was grossly unfair and yet another example of the bad faith actuating AGCS's claims handling as soon as it became aware of the true magnitude of 70th and Greenwood's covered "Loss."

48. On October 20, 2022 and December 22, 2022, AGCS sent further denial correspondence, this time directed at denying all coverage relative to damaged components of the roofing assembly. Like with its July 15, 2022 denial correspondence, AGCS's subsequent denial correspondence is premised on the unreasonable, red-herring that all building components can be conveniently lumped together into a "system" in order to find that a few discrete, workmanship issues mean that there is no damaged component—or portion of a damaged component—free of the defective, faulty or inadequate condition … but damaged as a consequence thereof.

49. It has taken 70th and Greenwood considerable time and expense to prepare and bring this complaint. In doing so, 70th and Greenwood relied on the bases set forth in AGCS's denial as setting forth AGCS's true and complete coverage position.

### IV. CAUSES OF ACTION

### COUNT ONE: BREACH OF CONTRACT

50. 70th and Greenwood realleges and incorporates by reference each and every preceding paragraph.

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-8

Miller Nash LLP
605 5th Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

51. AGCS conduct as described above constitutes an unreasonable breach of its insurance contract with 70th and Greenwood. As a result, 70th and Greenwood has been damaged in an amount to be proven at trial, not less than $8,574,553 (exclusive of expert and attorneys' fees and other costs and damages to which 70th and Greenwood is entitled).

### COUNT TWO: COMMON LAW BAD FAITH

52. 70th and Greenwood realleges and incorporates by reference each and every preceding paragraph.

53. AGCS's actions and inactions as described herein were unreasonable, frivolous and/or unfounded and therefore, constitute bad faith. AGCS's bad faith has directly and proximately damaged 70th and Greenwood in an amount to be proven at trial, but not less $8,574,553 (exclusive of expert and attorneys' fees and other costs and damages to which 70th and Greenwood is entitled).

### COUNT THREE: PER SE AND NON PER SE CONSUMER PROTECTION ACT CLAIMS AS AGAINST AGCS

54. 70th and Greenwood realleges and incorporates by reference each and every Lowell's realleges and incorporates by reference each and every preceding paragraph.

55. AGCS's acts and omissions as described above violated multiple provisions of WAC 284-30-330 including, but not limited to, subsections (1), (3), (4), (7), and (13); such violations are per se violations of RCW 19.86, Washington's Consumer Protection Act (the "CPA").

56. AGCS's acts and omissions also constitute non-non per se violations of the CPA: as pled above, such unreasonable acts and omissions were unfair or deceptive; occurred in trade or commerce; and affect Washington's policyholders and the public interest.

57. Such unfair or deceptive acts and omissions directly and proximately caused and continue to cause 70th and Greenwood to suffer damages in an amount to be proven at trial. These damages include, but are not limited to, the deprivation of benefits owed to 70th and Greenwood

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-9

Miller Nash LLP
605 5ᵗʰ Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

under the Policy and the costs associated with bringing this action for coverage, including court costs and attorney fees.

58. 70th and Greenwood is entitled to recovery of its actual damages, attorney fees, litigation costs, and treble its actual damages up to the statutory maximum, pursuant to RCW 19.86.090.

## COUNT FOUR: NEGLIGENCE

58. 70th and Greenwood realleges and incorporates by reference each and every preceding paragraph.

59. AGCS owed a duty to 70th and Greenwood to act reasonably and breached this duty by, at a minimum, failing to reasonably investigate the Claim, failing to reasonably attempt to resolve the Claim, and/or failing to provide a reasonable justification of AGCS's coverage position regarding the Claim. As a result, and pursuant to *First State Ins. Co. v. Kemper*, 94 Wn. App. 602 (1999), 70th and Greenwood asserts an independent negligence cause of action and is entitled to seek damages in an amount to be proven at trial of at least $8,574,553 (exclusive of attorneys' fees and experts costs to which it is entitled.)

## COUNT FIVE: INSURANCE FAIR CONDUCT ACT VIOLATION

60. 70th and Greenwood realleges and incorporates by reference each and every preceding paragraph.

61. 70th and Greenwood expressly reserves the right to amend this Complaint to assert claims under the Insurance Fair Conduct Act ("IFCA") pursuant to RCW 48.30.015(8).

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

1. For a judgment for money damages against AGCS in an amount to be proven and determined at trial not less than $8,574,553, plus interest at 12%,

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-10

Miller Nash LLP
605 5ᵗʰ Avenue S | Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

2. For treble damages up the statutory maximum as allowed under the Insurance Fair Conduct Act and Consumer Protection Act.

3. For expert fees and attorneys' fees, and other costs as allowed by statute, common law and/or Washington regulatory law;

4. Any other and further relief the Court deems just and equitable.

DATED this 10th day of August, 2023.

s/ Tristan Swanson
Tristan Swanson, WSBA No. 41934
s/ Donald B. Scaramastra
Donald B. Scaramastra, WSBA No. 21416
Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA 98104
Telephone: (206) 624-8300
Fax: (206) 340-0599
Email: Tristan.swanson@millernash.com

*Attorney for Plaintiff 70th and Greenwood, LLC*

PLAINTIFF 70TH AND GREENWOOD'S
COMPLAINT-11